UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY GELLER,

       Plaintiff,                           CASE NO. 04-72947

-vs-                                           PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

WASHTENAW COUNTY,
WASHTENAW COUNTY
TRIAL COURT, JUSTICE
MAURA D. CORRIGAN,

       Defendants.
_____/

## ORDER (1) DENYING IN PART DEFENDANT WASHTENAW COUNTY'S MOTION TO DISMISS, DENYING DEFENDANT WASHTENAW COUNTY'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT WASHTENAW COUNTY TRIAL COURT'S MOTION TO DISMISS

Presently before the Court are (1) Defendant Washtenaw County's ("County's") Motion to Dismiss and/or for Summary Judgment and (2) Defendant Washtenaw County Trial Court's ("Trial Court's") Motion to Dismiss and/or Summary Judgment.

**I.    BACKGROUND**

Bradley Geller ("Plaintiff") was employed as a law clerk/probate counsel to Washtenaw County Probate Court ("Probate Court") Judge John N. Kirkendall. (Compl. ¶ 3). On February 5, 2004, Plaintiff received a letter from Trial Court Administrator Daniel Dwyer stating that his position as probate counsel was being eliminated February 20, 2004. "Therefore, effective February 20, 2004, you will be laid off from *Washtenaw County employment*." (Compl. Ex. 1) (emphasis added).

1

Plaintiff's firing by Trial Court was allegedly part of a reorganization of the Washtenaw County Probate Court, in response to an October 23, 2003 State of Michigan Office of the Auditor General ("A.G.") report on the Performance Audit of five probate courts. (Def.'s Mem. Supp. Summ. J. Ex. B at 4.). In addition to Washtenaw, the counties of Huron, Calhoun, Jackson and Wayne were audited. (*Id.*). The A.G. report outlined extensive problems regarding the improper handling of conservatorship cases, (Compl. ¶ 19), including failures relating to the restricted bank account process, fund withdrawals without authorization, and other office inefficiencies. (Def.'s Mem. Supp. Summ. J. Ex. B at 4-5).

Following these reports, then-Michigan Supreme Court Chief Justice Maura D. Corrigan[1] ("Defendant") took action, and as to the Washtenaw County Court, appointed Washtenaw County Circuit Judge Archie Brown as Chief Judge of the Probate Court. (*Id.* at 5). Judge Brown replaced Judge Kirkendall as Chief Judge of the Probate Court. Plaintiff was employed as a law clerk/probate counsel to Judge Kirkendall prior to his termination. Judge Brown appointed Washtenaw County Circuit Judge Donald E. Shelton as Chief Judge Pro Tem of the Probate Court. (*Id.*). County then eliminated two positions - Plaintiff's position as probate counsel, and the position of register of the Probate Court held by Hillary Muscato. (Def.'s Mem. Supp. Summ. J. Ex. B at 19; Def.'s Mem. Supp. Summ. J. 4).

Plaintiff filed his Complaint on August 4, 2004 alleging the following claims against defendants Trial Court, County, and Justice Corrigan:

(1) 42 U.S.C. §1983 - (All Defendants);

---

[1] Justice Corrigan's term as Chief Justice has concluded. She continues to serve as an Associate Justice of the Michigan Supreme Court.

(2) Unlawful Termination and Breach of Contract for Employment - (Defendants County and Trial Court;

(3) Unlawful Interference with Plaintiff's Employment Relationship - (Defendant Corrigan);

(4) Failure to Follow Washtenaw County's Employment Policies and Failure to Follow Michigan Court Rules - (Defendants County and Trial Court);

(5) Denial of Due Process - (All Defendants); and

(6) Denial of Equal Protection and Michigan Elliott-Larsen Civil Rights Act - (Defendants County and Trial Court).

## II.  STANDARD OF REVIEW

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), and for summary judgment under Fed. R. Civ. P. 56. A claim should not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss, a court must consider all affidavits and pleadings in a light most favorable to the plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal. *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003) (citing *Dean v. Motel 6 Operating, LLP,* 134 F.3d 1269, 1272 (6th Cir. 1998)).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact."  *Id.* (citations omitted).  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss. *Id*. "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* Fed. R. Civ. P. 56(e) ([requiring the "nonmoving party to go beyond the pleadings.").

However, the Sixth Circuit has said the following about considering motions for summary judgment where discovery has not been forthcoming:

> It is well-established that the plaintiff must receive "a full opportunity to conduct discovery" to be able to successfully defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994) ("[in light of *Anderson* and *Celotex*,] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery.").

*Ball v. Union Carbide Corp.*, 385 F.3d 713, 719-20 (6th Cir. 2004).  In a recently issued opinion, the Sixth Circuit also stated that "courts are reluctant to dismiss colorable claims which have not

5

had the benefit of factual discovery." *Evans-Marshall v. Bd. of Ed.*, 428 F.3d 223, 228 (6th Cir. 2005).

The statement of Plaintiff's counsel at the hearing on this matter, as well as Plaintiff's existing motion to compel discovery, filed on June 16, 2005, persuades the Court that Defendants' motions must be treated as motions to dismiss. Put simply, Plaintiff has not had an opportunity to conduct meaningful discovery, and, therefore, summary judgment is not an appropriate consideration at this time.

### III.    WASHTENAW COUNTY

#### A.    County's Employment of Plaintiff

Plaintiff was employed by Trial Court. In *Judicial Attorneys Assoc. v. State of Michigan*, the Michigan Supreme Court stated that "[t]he judicial branch is constitutionally accountable for the operation of the courts and for those who provide court services, and must therefore be the employer of court employees." 459 Mich. 291, 302 (1998). *Judicial Attorneys Assoc.* held that a statute that changed the employer of local judicial employees from the state to County violated the Separation of Powers Clause of the Michigan Constitution. *Id.* at 306.

While the letter terminating Plaintiff stated that he was terminated by Trial Court Administrator, the letter of termination also stated that he will be laid off from Washtenaw County employment. Plaintiff worked for the probate court within the Trial Court. County's employee handbook states that court employees are not considered county employees.

The Court notes that Defendants County and Trial Court averred, in a separate case filed by Trial Court employees in the Federal District Court subsequent to this case, that County and Trial Court are co-employers. *LaVanway v. Washtenaw County*, Case No. 04-73879 (E.D. Mich.

filed Aug. 4, 2004). "Defendants Washtenaw County and Washtenaw County Trial Court are public employers and co-employers." Def.'s Mem. Supp. Summ. J. at 3, *LaVanway*, Case No. 04-73879. The descriptive term "co-employers" is repeated at page 12 of Defendants' pleading in *LaVanway*. This factual assertion by Defendants in a pleading submitted in this courthouse is significant.

The parties concede that County provides a significant portion of the financing of Trial Court, and is responsible for Trial Court's budget. Defendants' counsel acknowledged at oral argument on October 17, 2005, that Washtenaw County is a significant source of the funding for Trial Court. (Mot. Hr'g Tr. 26-27, Oct. 17, 2005). To the extent that Trial Court's decisions have financial ramifications, County is very much in play as the principal financial funding source for Trial Court.

County cannot claim sovereign immunity, because it is not an arm of the state. The Eleventh Amendment's protection does not extend to counties. *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003).

The issue as to County is whether it is a co-employer of Plaintiff, and if so, whether it is responsible for his claims relating to his termination. The specific question is whether County, as a co-employer, and a significant source of funds for Trial Court, is an appropriate defendant in this case.

At this stage, prior to discovery, Plaintiff's allegations do not warrant dismissal. Since County and Trial Court have been described by pleadings in ths courthouse as co-employers, Defendant County's motion to dismiss is denied with respect to Count II (Unlawful Termination and Breach of Contract of Employment) and Count V (Denial of Due Process).

>    B.    **Count VI: Denial of Equal Protection and Claim under the Michigan Elliot-Larsen Civil Rights Act**

Plaintiff alleges that he was treated differently than his female co-worker, who was offered another position after she and Plaintiff received notice that they had been terminated. Under the "modified" *McDonnell Douglas* requirements[2] for a *prima facie* case of gender discrimination, which the Michigan Supreme Court has utilized in deciding claims under the Elliott-Larsen Civil Rights Act ("ELCRA")[3], the plaintiff employee must show that: (1) he was a member of a protected class; (2) he applied and was qualified for a position; (3) he was considered for and denied the position; and (4) another employee with similar qualifications who was not a member of the protected class received the position. *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004). Although several aspects of the *prima facie* case are questionable, the most glaring omission in Plaintiff's *prima facie* case is that he did not apply for the position in question, and, therefore, was never considered for nor denied the position by Defendants. Muscato was offered the position but refused the offer. Plaintiff is not arguing that he was terminated because he was a man while other women remained on the job. Rather, he argues that Defendants merely offered another position to Ms. Muscato but did not offer it to him. He does not argue that he was prevented from applying from the job, nor that if he had applied that he would not have been offered the position as well. Thus, the Court finds that Plaintiff has failed to state a claim of gender discrimination.

---

[2] The test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for employment discrimination concerned racial discrimination. The test has since been modified by courts to apply to gender discrimination. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232 (6th Cir. 2005).

[3] *See Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 689 (1997).

For the same reason, Plaintiff's equal protection claim for Defendants' failure to offer him a position is also dismissed. Plaintiff's Complaint states that he was denied equal protection under the ELCRA when his co-worker, Ms. Muscato was "grant[ed] certain benefits including the right to reemployment at another position, while denying any such rights to plaintiff..." (Compl. ¶ 59). "Disparate treatment claims brought under the [ELCRA] have been construed in the same manner as federal civil rights claims." *Pitts v. Michael Miller Car Rental*, 942 F.2d 1067, 1070 (6th Cir. 1991).

In order to make a *prima facie* case of disparate treatment in a failure to rehire situation under the modified *McDonnell-Douglas* framework noted above, Plaintiff must show: (1) he is a member of a protected group, (2) he was qualified for the rehire or recall position, (3) that he applied for the available position or can establish that the employer was otherwise obligated to consider him, and (4) that the position went to someone outside the protected class or that other reasonable evidence exists that he was denied a position because of a discriminatory reason. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989). As stated above, Plaintiff has not shown that he applied for the position or that Defendants were under an obligation to consider him for the position. Therefore, Plaintiff's equal protection claim against County for gender discrimination is dismissed.

### C. Count I: Section 1983 Claims

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity

9

is responsible under § 1983." *Id.* "For a custom to give rise to *Monell* liability, the custom must be so permanent and well settled as to constitute a custom or usage with the force of law." *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005) (*citing Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996) (*quoting Monell*, 436 U.S. at 691). "Such a custom must include deeply embedded traditional ways of carrying out state policy."
*Miller*, 408 F.3d at 815.

The only conduct that Plaintiff alleges with respect to County is that it is the "funding agency for all of the trial court's expenses" and, thus, is the "real party in interest." Plaintiff has also alleged that County is a co-employer, which County acknowledged in a similar employment case in this courthouse. However, Plaintiff has not asserted a custom or policy that would subject County to liability under § 1983. All employment actions related to Plaintiff came at the direction from Trial Court, not County. Plaintiff fails to state in his pleadings what conduct by Washtenaw County violated § 1983. In *Miller*, the Sixth Circuit made it clear that the custom must include "ways of carrying out state policy." *Id.* Simply providing money to a trial court within County does not qualify as a manner of carrying out state policy. Therefore, the Court grants Defendant County's motion to dismiss Plaintiff's § 1983 (Count I) claim.

### D.     Count IV:  Failure to Follow Washtenaw County's Employment Policies and the Failure to Follow Michigan Court Rules

Paragraph 55 of Plaintiff's Complaint alleges that Defendants failed to follow their own employment policies and more specifically, that they violated M.C.R. 8.110(C)(3)(d). As Defendant correctly points out, the latter rule only applies to Trial Court's conduct. Therefore, to the extent that Plaintiff's allegations relate to Defendant County's violation of M.C.R. 8.110(C)(3)(d), that claim is dismissed. The remainder of Plaintiff's claims against County in

Paragraph 55 survive.

## III.  TRIAL COURT

### A.  Sovereign Immunity under the Eleventh Amendment

The Court finds that Trial Court, as a state entity, is immune from liability under the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  This amendment's applicability has been extended to suits by citizens against their own state. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing several past Supreme Court decisions).  However, the United States Supreme Court has stated that where the case concerns "the provision of judicial services," "local governments are typically treated as 'arms of the State' for Eleventh Amendment purposes" which enjoy the "same immunity from unconsented suit as the states." *Tennessee v. Lane*, 541 U.S. 509, 527 (2004) (citing *Callahan v. Philadelphia*, 207 F.3d 668, 670-674 (3d Cir. 2000) (finding that the municipal court is an "arm of the State" entitled to Eleventh Amendment immunity); *Kelly v. Municipal Courts*, 97 F.3d 902, 907-908 (7th Cir. 1996) (same); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (same); *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 368-369 (2001)).

Ths Sixth Circuit has considered several factors when determining whether an entity should be considered an arm of the state entitled to sovereign immunity. These factors include: "(1) whether the state would be responsible for a judgment against the entity in question; (2) how

state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding."  *S.J. v. Hamilton County*, 374 F.3d 416, 420 (6th Cir. 2004.) In considering whether an Ohio court qualified as an "arm of the state," the Sixth Circuit stated that the most important factor in the analysis is "who pays a damage judgment against an entity." *Alkire*, 330 F.3d at 811-12 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997) (the question of whether a money judgment would be paid by the state is of "considerable importance.").  In its subsequent opinion in *S.J. v. Hamilton County*, *supra*, the Sixth Circuit expressed some doubt as to whether the impact on the state treasury has become the only factor to be considered in the arm of the state analysis.  *S.J.*, 374 F.3d at 421.  The court of appeals stated that the sovereign immunity doctrine not only protects a state's sovereignty but also "pervasively. . . emphasizes the integrity retained by each state in our federal system."  *Id.* (quoting *Hess v. Port Authority Trans-Hudson Corp*., 513 U.S. 30, 39 (1994)).

In the event that no evidence is presented regarding the issue of whether the funds to satisfy a judgment would come from the state, the Sixth Circuit has considered the weight of the other factors.  *Dubac v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003).

In this case, neither party disputes that County provides funding to Trial Court, nor that the state of Michigan also provides significant funding for Trial Court.  In addition, Defendant states in its brief that Trial Court would bear the obligation for half of any judgment.

In addition, in analyzing this claim, the Court notes that it has previously stated that "in the absence of evidence on the most important factor, [the Court] looks to the 'dignity' factor examined by the Sixth Circuit in [*S.J.*]." *Smith v. Oakland County Circuit Court*, 344 F. Supp. 2d 1030, 1055 (E.D. Mich. 2004).  Although the Sixth Circuit has thrown into question its decisions

in *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997) and *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988) (per curiam), because of the Supreme Court's decision in *Mt. Healthy* that the most important factor in sovereign immunity analysis is who will be ultimately responsible for any money judgment, the court of appeals' reasoning on the "dignity" factor also points to a finding that Trial Court is entitled to sovereign immunity on the claim of monetary damages.

In *Mumford*, the Sixth Circuit held that an Ohio municipal court was not an arm of the municipality which it served, and was instead a component of the State of Ohio that was insulated from suit in federal court:

> It cannot seriously be argued that an Ohio municipal court is indistinguishable from the municipal corporation in which it sits. The Akron Municipal Court is part of the Ohio state court system, established by the Ohio state legislature. Ohio Rev.Code § 1901.01. It is subject to the supervision of the Ohio Supreme Court. Ohio Const., Art. IV, § 5. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction. *See State ex rel. Cherrington v. Hutsinpiller*, 112 Ohio St. 468, 147 N.E. 647 (1925). The territorial jurisdiction of the Akron Municipal Court is not coextensive with the city limits of Akron. Ohio Rev.Code § 1901.02(B). The employees of the Akron Municipal Court are not city employees subject to the authority of the Akron Civil Service Commission. (citation omitted).

864 F.2d at 418-19.

In *Mumford*, the Sixth Circuit held that an Ohio county common pleas court was an arm of the state and not a segment of county government in a suit brought by a court employee. In so holding, the court of appeals found persuasive, among other factors, that "the fundamental law of Ohio imparts supervisory authority over all courts of that state, and the authority to promulgate rules for all courts of that state, to the Ohio Supreme Court," *Mumford*, 105 F.3d at 268, that "state statutes delineate the jurisdiction of the court," *id.*, and that "the authority to hire personnel, including referees, for the domestic relations courts is delegated by state statute to the courts

13

themselves rather than to county administrations." *Id.* Moreover, the fact that County provided funding for the court was not fatal to a finding that the court had sovereign immunity. *See Mumford*, 105 F.3d at 269.

Here, Defendant Trial Court is also entitled to sovereign immunity as to monetary damages. Much like the court in *Mumford*, Trial Court is also subject to the Michigan Supreme Court's authority, and the authority to hire and fire personnel is designated by state statute to the courts rather than county administrators. Although Washtenaw County may provide funding to Trial Court, and may be the co-employer of Trial Court employees, this does not mean that Defendant Trial Court is not protected by the doctrine of sovereign immunity.

Significantly, the Supreme Court held unanimously in *Regents of the University of California v. Doe*, 519 U.S. 425, 431 (1997), "that with respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant."

Thus, Trial Court is protected against Plaintiff's claims under the doctrine of sovereign immunity.

### B. Trial Court's Qualification as a "Person" within the Meaning of 42 U.S.C. § 1983

Because Defendant Trial Court, as stated above, is an arm of the state, it cannot be considered a "person" for purposes of liability under § 1983. *See Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) ("Of course, insofar as Holmes County Court is an arm of the State of Ohio entitled to sovereign immunity, it is not a 'person' for purposes of § 1983.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)); *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988) (stating that courts that have considered the issue "have held unanimously that a court is not a

'person' within the meaning of that term as used in § 1983."); *see also Bridges v. Senger*, 730 F. Supp. 1401, 1408 (W.D. Mich. 1990) (noting that "a court is defined not as a person or quasi-artificial person. . . but as a 'place in which justice is judicially administered. . . .") (citations omitted). Therefore, Plaintiff's claims against Defendant Trial Court that are predicated on liability under § 1983 are dismissed.

## IV.    CONCLUSION

    For the foregoing reasons, the Court hereby:

    (I)    DENIES Defendant County's Motion to Dismiss Counts II (Unlawful Termination and Breach of Contract of Employment) and V (Denial of Due

        Process)[4];

(II)    GRANTS Defendant County's Motion to Dismiss Counts I (42 U.S.C. § 1983) and VI (Denial of Equal Protection and Claim under the Michigan Elliott-Larsen Civil Rights Act);

(III)    GRANTS IN PART, DENIES IN PART Defendant County's Motion to Dismiss Count IV (Failure to Follow Washtenaw County's Employment Policies and the Failure to Follow Michigan Court Rules); and

(IV)    GRANTS Defendant Trial Court's Motion to Dismiss all counts against it.

**SO ORDERED.**


                **s/Paul D. Borman**
                **PAUL D. BORMAN**
                **UNITED STATES DISTRICT JUDGE**

**Dated: December 29, 2005**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 29, 2005.**

                **s/Jonie Parker**
                **Case Manager**

---

[4]Count III (Unlawful Interference with Plaintiff's Employment Relationship) pertains to the conduct of Defendant Corrigan only.